IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 07-cv-00478 - LTB - MJW

THE PEOPLE OF THE STATE OF COLORADO, ex rel. JOHN SUTHERS, COLORADO ATTORNEY GENERAL,

    Plaintiff,

v.

ALBERTO GONZALES, in his official capacity as the Attorney General of the United States;
MICHAEL CHERTOFF, in his official capacity as Secretary of the United States, Department of Homeland Security; and
UNITED STATES OF AMERICA,

    Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

This matter is before me on Defendants' Motion to Dismiss [Doc # 3]. After consideration of the motion and all related pleadings, as well as the arguments made at the hearing held on September 20, 2007, I grant the motion as set forth below.

**I. Background**

On November 7, 2006, the voters of the State of Colorado approved referred House Bill 06S-1022. This law, which has been codified at Title 24, Article 19.8 of the Colorado Revised Statutes, provides, in part, that "the Colorado state attorney general shall initiate or join other states in a lawsuit against the United States attorney general to demand the enforcement of all existing federal immigration laws by the federal government."

In compliance with this directive, Plaintiff commended this action wherein it states two claims for relief against Defendants. By its First Claim for Relief, Plaintiff seeks a writ of mandamus ordering the Secretary to prepare and implement a comprehensive plan to secure the nation's borders against illegal immigration and to implement all of the requirements of the Intelligence Reform and Terrorism Prevention Act of 2004 (the "IRTPA"). By its Second Claim for Relief, Plaintiff similarly seeks a writ of mandamus ordering the Attorney General and the Secretary to prepare and implement a comprehensive plan to secure the nation's borders against illegal immigration. If they fail to do so or fail to do so in an acceptable manner, Plaintiff further seeks an order requiring the Attorney General to authorize state or local law enforcement officials to perform the duties imposed by the Homeland Security Act of 2002 (the "HSA") and the IRTPA and requiring the Government to reimburse states the costs of performing these duties. Both Plaintiff's First and Second Claims for Relief are predicated on the Invasion Clause of the U.S. Constitution.

## II. Analysis

Defendants argue that Plaintiff's Complaint should be dismissed because (1) it raises nonjusticiable issues under the political question doctrine; (2) Plaintiff lacks standing; and (3) each of Plaintiff's claims fail to state a claim upon which relief may be granted, in part, because they are not yet ripe. Because nonjusticiability under the political question doctrine, standing, and ripeness are fundamental jurisdictional predicates, I will consider these issues first. *See Schneider v. Kissinger,* 412 F.3d 190, 193 (D.C. Cir. 2005), *cert. denied,* 547 U.S. 1069 (2006) (recognizing long-standing principle that courts lack jurisdiction over political decisions); *Nat'l Org. for Women v. Scheidler,* 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement

...."); *Park Lane Resources Ltd. Liab. Co. v. U.S. Dept. of Agric.,* 378 F.3d 1132, 1135 (10th Cir. 2004) ("Ripeness is a jurisdictional issue."). I find and conclude, and so hold, that jurisdiction is lacking upon each predicate.

**A. Nature of the Issues Raised by Plaintiff's Complaint**

In *Baker v. Carr,* 369 U.S. 186, 217 (1962), the Supreme Court set forth the considerations to be analyzed in determining whether an issue is nonjusticiable under the political question doctrine, stating

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Defendants argue that Plaintiff's claims implicate many of the considerations set forth in *Baker* and are therefore nonjusticiable. I agree. First, it is beyond dispute that there is a "textually demonstrable constitutional commitment" of naturalization and immigration to Congress. *See* U.S. Const., Art. I, § 8. *See also Fiallo v. Bell,* 430 U.S. 787, 792 (1977) (recognizing broad scope of Congress's power over immigration that is largely immune from judicial control). Second, with respect to Plaintiff's requested writs of mandamus, there is a "lack of judicially discoverable and manageable standards for resolving" whether any plan to secure the nation's borders against illegal immigration is comprehensive or adequate; whether the Secretary or the Attorney General has failed or refused to prepare a comprehensive or adequate immigration

plan; or whether the Department of Homeland Security's ("DHS") budget allocations are reasonable or should be modified.  Further, both of Plaintiff's claims are predicated on its contention that Defendants have violated the Invasion Clause of the U.S. Const., Art. IV, § 4, which provides that "[t]he United States ...shall protect each of the states against invasion."  As such, this claim implicates foreign policy and national defense issues, which are the province of the political branches of government and which the courts are reluctant to address.  *See e.g. Chicago & Southern Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 111 (1948).

      Plaintiff's response brief largely fails to address the factors set forth in *Baker*.  Plaintiff does, however, argue that its allegation that Defendants have violated the Invasion Clause is justiciable because the political branches of government have already declared that an invasion has occurred and it is therefore unnecessary for the Court to independently make this determination. In support of this argument, Plaintiff cites a number of governmental statements and policies which, at best, imply that the United States was invaded as a result of the terrorist attacks on September 11, 2001 and is at risk for further invasion through future terrorist acts.  These statements and policies, however, do not constitute a legal determination that the United States has been invaded within the meaning of the Invasion Clause.  The Court would therefore be in the untenable position of determining whether there has been an invasion under the Invasion Clause notwithstanding these statements and policies.  Moreover, even if I was to conclude that the political branches of government have already determined that the United States has been invaded within the meaning of the Invasion Clause, this conclusion would not eliminate the other *Baker* considerations discussed above or alter the nonjusticiability of Plaintiff's Second Claim for Relief.

*See Gross v. German Found. Indus. Initiative,* 456 F.3d 363, 377 (3rd Cir. 2006) (finding of any one of the *Baker* factors indicated presence of political question).

Accordingly, I conclude that the issues raised by Plaintiff's Complaint are nonjusticiable under the political question doctrine. This conclusion is in accord with that reached by other courts that have considered similar issues. *See e.g. State of California v. U.S.,* 104 F.3d 1086 (9th Cir. 1997), *cert. denied,* 522 U.S. 806 (1997); *Padavan v. U.S.,* 82 F.3d 23, 28 (2nd Cir. 1996). Although these other cases pre-date the terrorist attacks of September 11, 2001, the persuasiveness of their analysis on this issue is unabated. Plaintiff's claims against Defendants must therefore be dismissed as nonjusticiable.

## B. The Issue of Standing

Defendants' argument that Plaintiff lacks standing to bring its claims against Defendants is essentially twofold. First, Defendants argue that Plaintiff cannot satisfy the requirements for Article III standing. Defendants also argue that Plaintiff cannot satisfy the requirements for prudential standing because a state may not sue the federal government on behalf of its citizens and because it cannot demonstrate that it is within the zone of interests that IRTPA was enacted to protect.

### 1. Article III Considerations

The constitutionally required elements of standing are (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the alleged injury will be redressed by the relief sought. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

The first element of standing - an injury in fact- requires a showing that Plaintiff has suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). Further, "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright,* 468 U.S. 737, 754 (1984). *See also Day v. Bond,* — F.3d —, 2007 WL 2452681, 6 (10th Cir. 2007) (injury required under Article III may exist by virtue of private, individualized right conferred by statute as distinct from generalized interest in compliance with statute).

Here, Plaintiff has characterized its injury as one to "its Constitutional right to protection against invasion by a foreign power - international terrorists" that has resulted, at least in part, from Defendants' alleged failure to obey the law. Defendants argue this alleged injury fails to satisfy the injury in fact element of standing because it is not particularized and instead reflects a general and speculative fear of future terrorists acts in Colorado. I agree. Although Defendants continue to acknowledge with good reason the ongoing and serious threat of future terrorist attacks in this country, there is no basis on which to conclude that such attacks are imminent in Colorado. Accordingly, Plaintiff has failed to meet its burden of establishing an injury in fact and therefore lacks standing to pursue its claims against Defendants.

The second element of standing - causation- requires a showing that the alleged injury is "fairly ... trace[able] to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (*quoting Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41-2 (1976)). In cases where a plaintiff is challenging the legality of government action or inaction with respect to third parties, standing

is not precluded but is substantially more difficult to establish. *Id.* at 562. In any event, the causation necessary to support standing must not be speculative. *See Glover River Org. v. U.S. Dept. of Interior,* 675 F.2d 251, 255 (10th Cir. 1982) (holding that alleged causation was "far too speculative to support standing").

Defendants argue that Plaintiff cannot establish the causation element of standing because their alleged injury, ie. vulnerability to a terrorist attack, is not the direct result of Defendants' alleged failure to take appropriate measures to thwart illegal immigration. Instead, myriad additional contingencies need to be present before an increased risk of a terrorist attack in Colorado can be linked to Defendants' alleged failures with respect to illegal immigration. Among other things, illegal aliens who intend to perpetrate terrorist attacks must enter the United States and then Colorado as a result of the particular failings by Defendants that have been alleged in this case. I agree that Plaintiff's causation argument is speculative and that Plaintiff cannot meet the heightened burden it bears to demonstrate that Defendants' failure to take certain actions with respect to third parties has caused its alleged injury. Plaintiff has therefore failed to meet its burden of establishing the causation element of standing.

The third element of standing - redressibility- requires a showing that it is likely, as opposed to merely speculative, that plaintiff's injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561. Plaintiff's argument in support of redressibility is summed up in conclusory fashion as follows:

> [Plaintiff] is confident that if Defendants fully obey the law and place the tools to do the job (more Agents, Investigators and detention beds) in the hands of the Border Patrol and Immigrations and Customs Enforcement, they are more likely to achieve operational control of the borders and reduce the international terrorist threat to the State and its citizens.

As Plaintiff acknowledges then, the relief it seeks from the Court may, at most, make it more likely that the Government will obtain control over the flow of illegal immigration into this country, and then into Colorado, and that this will in turn have some effect on the terrorist threat it perceives.  Nonetheless, Plaintiff argues that this uncertain outcome is sufficient to satisfy the redressibility requirement of standing consistent with *Massachusetts v. EPA,* — U.S. — , 127 S. Ct. 1438, 167 L.Ed.2d 248 (2007) and *Watt v. Energy Action Educ. Foundation,* 454 U.S. 151 (1981).  But the facts and circumstances at issue in *Massachusetts* and *Watt* were fundamentally different from those at issue in this case.

In *Massachusetts*, various parties, including several states, petitioned for review of an order of the EPA denying a rulemaking petition requesting that it regulate greenhouse gas emissions from motor vehicles under the Clean Air Act.  In addressing the respondents' challenge to the petitioners' standing, the Supreme Court recognized that a litigant to whom Congress has granted a procedural right to protect his interests, such as the right to challenge agency action unlawfully withheld under Section 7607(b)(1) of the Clean Air Act, 42 U.S.C. § 7401, *et seq.,* can assert that right without meeting all of the general standards for redressibility and immediacy.  *Id.* at 1453.  Thus, the Supreme Court's redressibility analysis in Massachusetts is of limited applicability in this case where no comparable procedural right to protect Plaintiff's interests is present.

In *Watt*, the State of California, among others, sought declaratory and injunctive relief based on the Secretary of the Interior's alleged failure to comply with certain provisions of the Outer Continental Shelf Lands Act Amendments of 1978, 43 U.S.C. § 1331, *et seq*., that required the Secretary to experiment with non-traditional bidding systems in an effort to maximize

revenues from offshore oil and gas leases. The petitioners argued that the relief requested, ie. experimental use of non-traditional bidding systems, would not ensure that any alternative bidding system would in fact be used on parcels leased off the California coast and thereby redress California's alleged injury of failing to realize a fair return on these leases. *Id.* at 161. In rejecting this argument and holding that California had standing to challenge the Secretary's actions, the Supreme Court concluded that the Secretary would naturally, following experimentation, use the most successful bidding system on all leased tracts, including those off the California coast. *Id.* at 161-2. Presumably, California would thereby be assured of receiving a fair return on its resources. This case does not lend itself to the same logic, and I conclude that Plaintiff's argument is too speculative to satisfy the redressibility element of standing.

Having failed to satisfy any of the Article III requirements, Plaintiff lacks standing to pursue its claims against Defendants.

### 2. Prudential Standing

I first note that prudential standing "is not jurisdictional in the same sense as Article III standing" because it is based on judicially-created rather than constitutionally mandated standards. *Finstuen v. Crutcher,* — F.3d —, 2007 WL 2218887 (10th Cir. 2007). Nonetheless, the issue of standing requires consideration of both the constitutional limits on federal court jurisdiction as discussed above and prudential limits on its exercise. *Bd. of County Comm'rs v. Geringer,* 297 F.3d 1108, 1111 (10th Cir. 2002). Plaintiff bears the burden of establishing prudential standing. *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1450 (10th Cir. 1994).

The principles of prudential standing encompass the doctrine of *parens patriae* which pertains to a state's ability to sue on behalf of its residents. Here, largely in reliance on *State ex*

*rel. Sullivan v. Lujan,* 969 F.2d 877 (10th Cir. 1992),  Defendants argue that the doctrine of *parens patriae* precludes a suit by the State of Colorado on behalf of its residents against the federal government.  In *Sullivan*, the State of Wyoming filed a lawsuit against the Secretary of the Department of Interior, among others, asserting violations of federal statutes.  More specifically, the State claimed that as a result of an exchange of federally owned coal for a conservation easement it had suffered injuries from the threatened loss of royalty income and that it had been deprived of its right to have the interests of its citizens considered in connection with any such land exchange.  *Id.* at 882.  The Tenth Circuit rejected the State's claim predicated on the interests of its citizens based, in part, on its conclusion that the State did not have standing as a *parens patriae* to bring an action on behalf of its citizens against the federal government.  *Id.* at 883.  This conclusion in turn was based on  *Alfred L. Snapp & Son, Inc. v. Peurto Rico ex rel., Barez,* 458 U.S. 592, 610 n. 16 (1982) and *Massachusetts v. Mellon,* 262 U.S. 447, 485-6 (1923).

     Since *Sullivan*, the Supreme Court has decided *Massachusetts v. EPA, supra*.  To reiterate, the various parties there, including several states, petitioned for review of an order of the EPA denying a rulemaking petition requesting that it regulate greenhouse gas emissions from motor vehicles under the Clean Air Act.  In addressing the respondents' challenge to the petitioners' standing, the Supreme Court focused on the position and interests of the State of Massachusetts.  *Id.* at 1454.  The Supreme Court went on to state that based on a ***procedural right*** to challenge the denial of its rulemaking petition contained ***within the Clean Air Act*** and on Massachusetts' stake in protecting its quasi-sovereign interests, "[Massachusetts] is entitled to special solicitude in our standing analysis."  *Id.* at 1454-5.  The Supreme Court further deemed

Congress's authorization of court challenges to EPA action "of critical importance to the standing inquiry." *Id.* at 1453.

Here, there is no doubt that the State of Colorado has a quasi-sovereign interest in the health and well-being of its residents that would be served by legal action designed to thwart future terrorist attacks of untold magnitude. But Plaintiff has failed to identify any recognition, by Congress or otherwise, of its right to challenge the actions that the Government has taken, or has failed to take, pursuant to the IRTPA or the Invasion Clause. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 287-90 (2002) (discussing factors demonstrating creation of enforceable rights under statute, including language and focus). So this case is distinguishable from *Massachusetts* and is instead subject to the general rule that "it is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government." *Mellon*, 262 U.S. at 485-6.

I conclude that the State of Colorado does not have standing to bring this action on behalf of its citizens. Although it is arguably the State of Colorado itself, rather than its citizens, whose rights and interests are implicated by the Government's alleged violation of the Invasion Clause (*see* U.S. Const., art. IV, § 4 (requiring the federal government to protect ***each of the states*** against invasion)) and by any costs the State would incur fulfilling the Government's responsibilities under the HSA and the IRTPA, this action has been brought solely on behalf of The People of the State of Colorado, Colorado's citizens. *Compare Massachusetts, supra; Sullivan, supra.* Any direct interest that the State of Colorado may have in the outcome of this case itself therefore cannot be used to establish standing, but is insufficient in any event.

Prudential standing also requires that "a plaintiff's grievance ... arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.* at 1112. Defendants argue that Plaintiff lacks prudential standing for its claims because there is no evidence that this type of action was contemplated under the IRTPA or the Invasion Clause. Plaintiff has failed to respond to this argument and has therefore failed to meet its burden of demonstrating that it is within the zone of interests protected by the IRTPA or the Invasion Clause.

For these reasons, Plaintiff further lacks prudential standing to pursue its claims against Defendants.

**C.  The Ripeness of Plaintiff's Claims**

Jurisdiction also fails, in part, on ripeness grounds. Plaintiff's claims under the IRTPA are predicated on the DHS's obligation to hire new agents and investigators and add new detention beds in fiscal years 2006 through 2010. Fiscal year 2006 has already come to a close, and the Court would therefore be capable of determining whether Defendants complied with the IRTPA during that year. Likewise, fiscal year 2007 will soon be coming to a close, and the Court will therefore soon be capable of determining whether Defendants complied with the IRTPA during that year. To the extent, however, that Plaintiff is asking the Court to delve into the DHS's planning process for fiscal years 2008 - 2010, I agree that this request is premature in view of the myriad events that could occur in the interim. Accordingly, Plaintiff's claims are also dismissed for lack of jurisdiction insofar as they are predicated on Defendants' anticipated failure to comply with the requirements of the IRTPA in the future.

**D.  Rule 12(b)(6) Considerations**

Because this action is instituted as required by the voters, appeal is virtually certain. To complete the record and out of an abundance of caution, I address Defendants' remaining arguments.

### 1. Standard of Review

When deciding a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (*quoting Gagan v. Norton,* 35 F.3d 1473, 1474 n.1 (10th Cir. 1994)). The Supreme Court has recently ruled that the standard for review previously applied under Fed. R. Civ. P. 12(b)(6), ie. that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). Although the Supreme Court did not clearly articulate the proper standard for a Fed. R. Civ. P. 12(b)(6) dismissal, its opinion in *Twombly* and its subsequent opinion in *Erickson v. Pardus*, — U.S.—, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), "suggest that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, n. 2 (10th Cir. 2007)(*citing Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)).

Under this new "plausibility" standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.,* 493 F.3d 1225, 1236 (10th Cir. 2007)(*citing Twombly*, 127 S.Ct. at 1960); *see also Alvarado*, 493 F.3d at 1215

("[w]e look for plausibility in th[e] complaint"). "[W]e must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* — F.3d —, 2007 WL 2136579, 3 (10th Cir., July 26, 2007)(*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). Although the plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action . . . [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (*quoting Twombly*, 127 S.Ct. at 1955; *Erickson,* 127 S.Ct. at 2200). Plaintiff fails to meet this standard.

### 2. Plaintiff's First Claim for Relief

Defendants argue that Plaintiff's First Claim for Relief fails to state a claim upon which relief may be granted because other courts have previously held that the migration of alien civilians into the United States does not constitute an invasion within the meaning of the Invasion Clause. *See e.g. Padavan,* 82 F.3d at 28. Plaintiff, however, is not asking the Court to decide if an invasion has occurred as a result of illegal immigration. Rather, Plaintiff splits a fine hair by asking the Court to decide whether the Government has already determined that an invasion occurred as a result of the terrorist attacks on September 11, 2001 and the ongoing threat of future terrorist attacks. The parties address only this question in their briefs.

But Plaintiff alleges two things in its claim for mandamus relief. First, DHS is failing to protect the states against invasion in violation of Article 4, Section 4. As a remedy, Plaintiff seeks a writ of mandamus ordering the Secretary to "[p]repare and implement a comprehensive plan to

secure the nation's borders against illegal immigration within a reasonable time to be determined at trial." Such a broad brush prayer is clearly beyond the ken of this Court or any other. *See Baker*, 369 U.S. at 217.

Second, Plaintiff seeks a writ of mandamus ordering the Secretary to "implement all the requirements of the [IRTPA], including full funding for Border Patrol agents, immigration investigators and detention bed centers for fiscal years 2006 through 2010." This facet of Plaintiff's first claim suffers the same defects addressed regarding Plaintiff's second claim, *infra*.

I conclude Plaintiff's first claim fails to state a cognizable claim for relief.

### 3. Plaintiff's Second Claim for Relief

In support of both its First and Second Claims for Relief, Plaintiff alleges that the Government has failed to comply with the IRTPA by not hiring the number of new agents and investigators and not adding the number of detention beds called for by this Act. The obligation to hire new agents and investigators under the IRTPA is, however, "subject to the availability of appropriations for such purposes," while the obligation to add new detention beds is "[s]ubject to the availability of appropriated funds." IRTPA, Pub. L. No. 108-458 §§ 5202-5204, 118 Stat. 3638, 3734-35. Defendants argue that this language gives DHS discretion to determine whether it has sufficient resources to meet the statutory requirements for hiring new agents and investigators and adding new detention beds. Defendants further argue that Plaintiff fails to state claims upon which may be granted because the DHS's exercise of this discretion is not subject to court review. In support of its argument that the DHS's exercise of discretion in allocating amounts appropriated to it by Congress is nonreviewable, Defendants cite *Lincoln v. Vigil,* 508

U.S. 182 (1993). In *Lincoln*, the Supreme Court considered a challenge to a decision by the Indian Health Service to discontinue the Indian Children's Program, which the Service had been funding from yearly lump-sum appropriations it received from Congress under the authority of two statutes that authorized the Service to make expenditures for Indian healthcare in general terms. In holding that the Service's decision was not subject to review, the Supreme Court noted that "[t]he allocation of funds from a lump-sum appropriation is ... traditionally regarded as committed to agency discretion." *Id.* at 192. The Supreme Court further noted that this was appropriate because "an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of factors which are peculiarly within its expertise'" such as "whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies;' and 'indeed, whether an agency has enough resources' to fund a program 'at all.'" *Id.* at 193 (*quoting Heckler v. Chaney,* 470 U.S. 821, 831 (1985)).

Plaintiff argues that this case is distinguishable from *Lincoln* because under the IRTPA, unlike the statutes at issue in *Lincoln*, Congress circumscribed the DHS's discretion to hire new agents and investigators and add new detention beds by stating that the DHS *shall* increase the number of these border enforcement mechanisms by a specified number provided that a sufficient appropriation has been made. *But see e.g.* IRTPA, § 5202 ("In each of the fiscal years 2006 through 2010, the Secretary of Homeland Security shall, ***subject to the availability of appropriations for such purpose***... increase by not less than 2,000 the number of positions for full-time active-duty border enforcement agents. ...") (emphasis added).

In *State of New Jersey v. U.S.*, 91 F.3d 463, 470 (3rd Cir. 1996), the Third Circuit was faced with a statute that similarly provided that "[s]ubject to the amounts provided in advance in appropriation Acts, the Attorney General shall reimburse a State for the costs incurred by the State for the imprisonment of any illegal alien or Cuban national who is convicted of a felony by such state." In rejecting New Jersey's argument that a portion of Congress's lump-sum appropriation of over a billion dollars to the Attorney General for INS administration and enforcement should have been allocated to reimbursing it under this statute, the Third Circuit concluded that the statutorily required reimbursement was qualified by the phrase "[s]ubject to the amounts provided in advance in appropriation Acts" and that since none of the lump-sum appropriation was earmarked for disbursement under this statute the decision of whether to do so was committed to agency discretion and unreviewable. *Id.* at 471.

By the same token, the hiring of new agents and investigators and addition of detention beds required under the IRTPA is conditioned on adequate appropriations, and it is within the DHS's discretion to determine whether its overall budget includes adequate funds to meet these requirements. Although Plaintiff also argues that Congress may in fact have appropriated sufficient funds to specific budget accounts to meet the IRTPA's mandates, this argument is mere speculation and is insufficient to defeat Defendants' argument for dismissal of Plaintiff's IRTPA claims. *See Twombley*, 127 S.Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level"). I therefore conclude that the DHS has discretion to determine whether it has sufficient resources to meet the IRTPA's mandates for hiring new agents and investigators and adding new detention beds that is not subject to court review.

Finally, to the extent this claim seeks a writ of mandamus ordering the Secretary and the Attorney General to prepare and implement a comprehensive plan to secure the nation's borders against illegal immigration within a reasonable time, it fails for the same reason that facet of Plaintiff's First Claim for Relief fails.

For these reasons, I conclude Plaintiff's second claim fails to state a cognizable claim for relief.

### 4. Sovereign Immunity

Defendants argue that Plaintiff's request that the Court, in the alternative, order the Government to reimburse the States for their reasonable costs of performing duties imposed on DHS by the HSA and the IRTPA is barred by the doctrine of sovereign immunity, which dictates that "[t]he States of the Union, like all other entities, are barred by federal sovereign immunity from suing the United States in the absence of an express waiver of this immunity by Congress." *Block v. North Dakota,* 461 U.S. 273, 280 (1983). Plaintiff has failed to respond to this argument. But, it is readily apparent that the monetary relief Plaintiff seeks is barred. *See State of California,* 104 F.3d at 1095 (doctrine of sovereign immunity for money damages extends to claims for "reimbursement"). Plaintiff's claim for reimbursement is therefore dismissed.

For the reasons set forth above, IT IS ORDERED that:

1) Defendants' Motion to Dismiss [Doc # 3] is GRANTED;

2) Plaintiff's claims against Defendants are hereby DISMISSED WITH PREJUDICE for lack of jurisdiction;

3) In the alternative, Plaintiff's claims against Defendants are hereby DISMISSED WITH PREJUDICE for failure to state claims upon which relief may be granted; and

4) Defendants shall be awarded their costs.


Dated: September   21  , 2007 in Denver, Colorado.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, JUDGE